### Webster v. Royal Ins. Co.
*[Cite as 2 AOA 325]*

*Case No. 89-CA13*
*Mahoning County, (7th)*
*Decided June 28, 1990*

*Michael I. Walling, Esq., Suite 300, The First Place 159 East Market Street Warren, Ohio 44481, For Plaintiffs-Appellants.*

*Joseph P. Sontich, Sr., Esq., 808 Wick Building Youngstown, Ohio 44503, For Defendant-Appellee, Royal Insurance Company of America.*

O'NEILL, P.J.
The appellants, Emily Webster and Bruce Webster, were married and, at all times pertinent herein, were living together as man and wife. From 1982 through December 13, 1985, both Websters were covered by insurance policies purchased by them and issued by Royal Insurance Company of America. During the year 1985, Bruce Webster was involved in a series of automobile accidents and received a number of violation points against his driver's license. As a consequence, on November 13, 1985, defendant, Royal Insurance Company, sent a letter to the Websters notifying them that, effective December 13, 1985, their insurance policy would be canceled. At that time, Emily Webster phoned her insurance agent and requested that the agent obtain insurance coverage for her. Shortly thereafter, Mrs. Webster was advised by the agent that she could have the same coverage with Royal Insurance on the two motor vehicles which were registered in her name, but that her husband could not be included on the policy, and that each of them would have to sign an agreement acknowledging that Bruce Webster could not be covered if he had an accident driving one of the cars that was insured. They both signed an agreement-endorsement which read as follows:

"Nothing herein contained shall be held to alter, vary, waive or extend any of the terms, conditions, agreements or limitations of the above mentioned policy other than as stated herein below.

"In consideration of the premium at which the policy is written, it is agreed that the Company shall not be liable and no liability or obligation of any kind shall attach to the Company for losses or damage sustained while any motor vehicle insured hereunder is driven or operated by: Bruce Webster."

The Royal Insurance Company then issued a policy covering Emily Webster as the named insured and describing her automobiles as being an AMC Pacer and a Jaguar XKE Coupe. Mr. Webster, who owned one vehicle registered in his name at that time, a 1979 Lincoln Continental, obtained a financial responsibility bond from the Victoria Fire and Casualty Co. Mrs. Webster did not purchase additional insurance for any occasional use of the 1979 Lincoln owned by her husband. However, she continued to occasionally drive that automobile. On February 18, 1987, Emily Webster was driving the Lincoln Automobile, in the City of Warren, Ohio, with Bruce Webster riding as a passenger in the right front seat. An accident occurred with resulting injuries and claims for damages. Mrs. Webster was notified by Royal Insurance that any claims arising out of that accident was not covered under the policy of insurance issued by Royal Insurance.

The Websters eventually filed a declaratory judgment action in the trial court. Following a trial, the trial judge rendered judgment in favor

of the Royal Insurance Company concluding that the policy of insurance issued by Royal Insurance Company did not provide coverage for any claims arising out of the subject accident. The trial judge made some specific findings amongst which were:

"The Court finds from the evidence that the Plaintiffs, Emily Webster and Bruce Webster, were members of the same household.

"The Court further finds there was no coverage by Defendant, Royal Insurance Company of America, on the 1979 Lincoln Continental and that said vehicle was excluded by the provisions of the policy not covering non named vehicles or a vehicle owned by other members of the household."

These findings by the trial judge were obviously directed to exclusions which appeared as a part of the policy issued to Emily Webster. In general, this exclusion provided that there was not coverage, other than for the covered auto, upon any motor vehicle owned by any family member or furnished or available for the regular use of any family member. We must differ with the manner in which the trial judge arrived at his conclusion by finding that Emily Webster and Bruce Webster were "members of the same household." In determination of the rights under the policy issued, it is necessary to refer ourselves initially to definitions contained on page one of the ten page policy. It is specifically provided on page one, under the captioned definitions that:

"Throughout this policy, 'you' and 'your' refer to:

"1. The 'named insured' shown in the Declarations; and

"2. The spouse if a resident of the same household.

＊ ＊ ＊.

"'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."

It can be concluded from the foregoing that Bruce Webster and Emily Webster, by definition, appear in the policy at any point where the word "you" or "your" is used. Since this definition is specific, it is then only proper to conclude that the term "family member" has no reference to either Bruce or Emily Webster.

On page 3 of the policy, under Exclusion B, we find the following:

"B. We do not provide Liability Coverage for the ownership, maintenance or use of:

"1. Any motorized vehicle having less than four wheels.

"2. Any vehicle, other than your covered auto, which is:

"a. owned by you; or

"b. furnished or available for your regular use."

The Jaguar and Pacer automobiles were covered automobiles pursuant to the policy. The reference to any vehicle owned by "you" would, by way of definition, have reference to the 1979 Lincoln owned by Bruce Webster, the spouse, a resident of the same household. Accordingly, the exclusion very clearly provided no liability for the use of the 1979 Lincoln owned by Bruce Webster. It is upon the basis of these definitions that we differ from the fact findings by the trial judge.

The appellant has no quarrel with the foregoing resort to definitions nor with the foregoing application of the exclusion conditions to the policy. However, the appellants go on to argue that the unique factual situation involved in this case requires an equitable rather than a legal solution.

Prior to cancellation, both Emily Webster and Bruce Webster were insured by the Royal Insurance Company. They were well aware and, by contract in terms, were insured while driving any one of the three cars, two of which were owned by Emily Webster and one of which was owned by Bruce Webster. Upon receipt of the cancellation notice, Emily Webster contacted the Hogg Insurance Agency, agent for Royal Insurance. Emily Webster told the agent "-- I gotten a notice of cancellation and I was distressed to have no insurance" (Tr. 12). Emily Webster went on to instruct the Hogg Agency that she "-- had to have my coverage continued. How could I do it?" (Tr. 12). She was advised "-- that they could continue to get me coverage, the kind of coverage we had, but that Bruce -- I would have to sign an exclusion agreeing that he would not drive either one of the cars" (Tr. 13). Emily was asked "Did you inquire to the Hogg Insurance Co. as to whether you were now fully covered?" She responded to this "Yes" (Tr. 15). Emily Webster was then issued an auto insurance policy which contained, on its first page, under the caption PART A--LIABILITY COVERAGE, Insuring Agreement:

"We will pay damages for bodily injury or property damage for which any *covered person* becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking

for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted." (Emphasis added).

The theme of appellants' argument is to the effect that prior to cancellation Emily Webster had driven an automobile titled in Bruce Webster's name, with an awareness that she was insured while driving that automobile. Appellant goes on to argue that, at the time of cancellation, Emily Webster desired full coverage and informed the agent of this desire. Appellants argue that it should be concluded that Emily Webster understood by receiving full coverage that she had the same coverage which existed prior to cancellation, including coverage of her while driving an automobile owned by Bruce Webster. This argument is set forth in the brief of the appellants as follows:

"It is clear that it is reasonably probable to all parties defendant that Emily Webster occasionally drove vehicles titled to Bruce Webster prior to his cancellation by Royal Insurance. It is reasonably inferable that Mrs. Webster, who was assured that she had full coverage by the insurer's agent, would occasionally drive vehicles titled to Mr. Webster after issuance of policy PDA HN 26 64. Nevertheless, no one single word was spoken to her advising her to either not drive Mr. Webster's car or to obtain separate coverage for the use of his vehicles. She was, instead, told she was fully covered, which statement she reasonably relied upon. And this is what Mrs. Webster bargained for: 'Full Coverage'. If the interpretation of the exclusionary clause paraphrased, *ante*, which is urged by the defendant insurer is correct, then Mrs. Webster did not receive the policy for which she bargained. Thus, the insurer and its agent are guilty of misrepresentation herein, and that misrepresentation is due either to negligence or intent. * * *."

The policy issued to Emily Webster contained the following condition set forth at page 9 of the ten page policy:

"CHANGES

"This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change.

"We may revise this policy form to provide more coverage without additional premium charge. If we do this your policy will automat- ically provide the additional coverage as of the date the revision is effective in your state."

Specifically, the foregoing condition prohibits any alteration or amendment of the terms of the contract by anyone, including an insurance agent, other than Royal Insurance Company and then only by an endorsement issued by the Royal Insurance Company. Under cross-examination, the following dialogue took place between counsel for the appellee and the appellant, Emily Webster:

"Q. And you knew that there was certain language in this policy which regulated your rights as well as the rights of the company, didn't you?

"A. Yes." (Tr. 27).

In addition to Emily Webster's acknowledgement that she had read the policy, there is the further presumption that an insured, who has a policy in his possession, is presumed to know its provisions. *Ohio Farmers Insurance Co.* v. *Titus* (1910), 82 Ohio St. 161, 171.

"Furthermore, all cases agree that a stipulation in the policy to the effect that no agent has authority to waive or alter anything in the policy contained is a valid and enforceable provision, and if accepted by the insured has the effect of preventing the imputation of an agent's knowledge of a violation of a policy condition to the insurer so as to constitute a waiver of the provisions on the part of the insurance company or estop the company from asserting such provisions and conditions." 58 Ohio Jurisprudence 184-186, Insurance, Sec. 711.

However, although this presumed knowledge, on the part of the insured, might be an acceptable defense on the part of the insurance company, we must express an awareness that there was another defendant in the action in the lower court. The other defendant was the Robert E. Hogg Insurance Agency, Inc., which was the procurer of the policy in question. Count 4 of the plaintiffs-appellants' complaint alleged that, in the dealings between the plaintiffs-appellants and the Robert E. Hogg Insurance Agency, the Hogg Agency negligently failed to advise Emily Webster that the operation of her husband's automobile would give rise to coverage denial. It was further alleged that this negligent failure caused Emily Webster to suffer grievous emotional distress, and incur attorney fees, and suffer harassment and embarrassment from

passengers of the other involved auto and medical care providers of Emily Webster's husband, Bruce Webster.

Upon our review of the transcript before us, we do not find that the trial court disposed of this portion of the plaintiffs-appellants' complaint.

Accordingly, the judgment of the trial court, finding judgment in favor of the Royal Insurance Co. of America is affirmed. This cause is remanded to the trial court for disposition of claims between the plaintiffs and defendant, Robert E. Hogg Insurance Agency, Inc.

*Judgment affirmed.*

DONOFRIO, J., Concurs.
COX, J., Concurs.